IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **BENNY RAY SAUCIER** | § § § | **PLAINTIFF** |
| v. | § § | Civil No. 1:10CV429-HSO-JMR |
| **AVIVA LIFE AND ANNUITY COMPANY** | § § § | **DEFENDANT/ COUNTER-PLAINTIFF** |
| v. | § § | |
| **BENNY RAY SAUCIER, RSL FUNDING, LLC, and RSL-5B-IL, LTD.** | § § § § | **COUNTER-DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER DENYING COUNTER-DEFENDANTS RSL FUNDING, LLC, AND RSL-5B-IL, LTD.'S REQUEST TO COMPEL ARBITRATION, AND DIRECTING PARTIES TO SHOW CAUSE WHY INTERPLED FUNDS SHOULD NOT BE DISBURSED**

This matter is before the Court on remand from the United States Court of Appeals for the Fifth Circuit to "determine in the first instance whether any issues or claims decided by the state court are entitled to preclusive effect" and to "determine whether RSL is entitled to compel arbitration under 9 U.S.C. § 3." Op. [50] at 11. Plaintiff Benny Ray Saucier and Counter-Defendants RSL Funding, LLC, and RSL-5B-IL, Ltd., have filed Memorandum Briefs [56], [57], Responses [58], [59], and Replies [62], [63], in support of their respective positions on these issues. The Court, having considered the pleadings on file, the briefs and arguments of the parties, and relevant legal authorities, finds that the RSL entities are precluded from compelling arbitration and that their request to do so should be denied. The Court further finds that, in accordance with Federal Rule of Civil

Procedure 56(f)(3), because it appears that there may be no genuine dispute of material fact surrounding the issue of entitlement to the interpled funds in the registry of the Court such that summary judgment in Plaintiff Benny Ray Saucier's favor may be warranted, the parties will be directed to show cause within 20 days of entry of this Order why such funds should not be disbursed to Plaintiff Benny Ray Saucier.

### I. FACTS AND PROCEDURAL HISTORY

A.  Factual Background

This case stems from a dispute over entitlement to the proceeds of a structured settlement annuity funded by Commercial Union Insurance Company for the benefit of Plaintiff Benny Ray Saucier ["Plaintiff" or "Saucier"] and held by Defendant Aviva Life and Annuity Company ["Aviva"].  Compl. [1-1] at ¶¶ 1, 5; Aviva's Countercl. [4] at 1.  Saucier alleges in the Complaint that two lump sum payments are owed him under the annuity contract.  He maintains that $150,000.00 was payable to him on August 30, 2010, and that he is due to receive another $200,000.00 payment on August 30, 2015.  Compl. [1-1] at ¶ 5.

Saucier originally entered into a transfer agreement with Woodbridge Investments LLC ["Woodbridge"] to sell the two remaining payments to Woodbridge.  After the Chancery Court of Harrison County, Mississippi, First Judicial District, approved this transfer under the Mississippi Structured Settlement Protection Act, Miss. Code § 11-57-11, *et seq.* ["MSSPA"], Woodbridge was unable to pay the consideration approved in the transfer order.  *In the Matter of*

*Transfer of Structured Settlement Payment Rights by Benny Ray Saucier*, No. 2011-CA-01036-COA, 2013 WL 1197889, at *1–*2 (Miss. Ct. App. 2013) ["*In re Saucier*"]. Woodbridge then referred Saucier to RSL Funding LLC and RSL-5B-IL Ltd. [collectively, "RSL"].

In early 2009, Saucier entered into an amended transfer agreement with RSL, such that RSL would receive the two remaining payments from Aviva in exchange for the payment of $212,000.00. *Id.* On February 6, 2009, the Harrison County Chancery Court entered an Order granting RSL's motion for entry of an amended transfer order. Chancery Court Order [62-2] at 4–5. On March 12, 2009, the Chancery Court entered an Amended Order Approving of Transfer of Structured Settlement Rights which authorized RSL's purchase of Saucier's annuity pursuant to the MSSPA. Chancery Court Am. Order [62-3] at 3–5; *see also* Compl. [1-1] at ¶¶ 7-8; *In re Saucier*, 2013 WL 1197889, at *3.

B.  The State Court Litigation

On June 11, 2009, Saucier filed a motion to set aside the Chancery Court's Amended Order Approving of Transfer, which the Chancery Court granted in an Order dated September 8, 2009. Compl. [1-1] at ¶ 8; Chancery Court Order [62-4] at 1; *In re Saucier*, 2013 WL 1197889, at *4. In setting aside the transfer, the Chancery Court found that RSL had failed to comply with the provisions of the MSSPA and that RSL did not give Saucier notice of the hearing on RSL's motion for entry of an amended transfer order. Chancery Court Order [62-4] at 1; *In re Saucier*, 2013 WL 1197889, at *4. Saucier and RSL have been embroiled in

3

litigation regarding ownership of the annuity payments ever since. Compl. [1-1] at ¶¶ 7–15. While this state court litigation was ongoing, on July 12, 2010, Saucier requested that Aviva remit the $150,00.00 payment due on August 30, 2010. *Id.* at ¶ 15. According to Saucier, Aviva would not release the funds because of the then pending appeal of the Chancery Court order. *Id.*

In an opinion entered on March 26, 2013, the Court of Appeals of Mississippi affirmed the June 17, 2011, order of the Chancery Court which denied RSL's attempt to stay the Chancery Court proceedings to refer the matter to arbitration and granted a permanent injunction prohibiting arbitration. *In re Saucier*, 2013 WL 1197889, at *7. A more detailed account of the highly complicated procedural history of this litigation in the state courts is available in the Mississippi Court of Appeals' opinion in *In re Saucier*, 2013 WL 1197889, at *1–*7.

C.     Federal Court Proceedings

The parties have also appeared before this Court multiple times in litigation related to the annuity payments. In addition to the case currently before the Court, RSL filed a complaint [1] for interpleader, discharge, injunction, and attorney's fees on May 11, 2009, in *RSL Funding, LLC, and RSL-5B-IL v. Benny Ray Saucier*, 1:09cv300-HSO-JMR (S.D. Miss.). The Court *sua sponte* dismissed this matter on January 27, 2010, for lack of jurisdiction. RSL then filed a complaint [1] in *RSL Funding, LLC, and RSL-5B-IL v. Benny Ray Saucier and Internal Revenue Serv.*, 1:10cv145-LG-RHW (S.D. Miss.), for interpleader, discharge, injunction, and other relief on March 31, 2010. The matter was *sua sponte* dismissed without prejudice

on November 1, 2010, pursuant to Federal Rule of Civil Procedure 4(m) for failure to serve the defendants within 120 days of filing the complaint.

Saucier initiated the present litigation by filing a Complaint against Aviva in the Chancery Court of Harrison County, Mississippi, First Judicial District, on or about August 16, 2010, seeking a declaration of the rights of the parties. Compl. [1-1] at ¶¶ 15–16. Aviva removed the case to this Court on August 27, 2010, invoking diversity jurisdiction, pursuant to 28 U.S.C. § 1332. Notice of Removal, at p. 2. Saucier originally sought interest payments, attorney fees, and costs arising out of Aviva's alleged failure to timely comply with the annuity contract, and an award of "punitive or other damages, whether contractual or extra-contractual, arising out of or relating to [Aviva's] failure to timely tender to Saucier the August 30, 2010, disbursement under the annuity contract in question . . . ." *Id*.

On August 30, 2010, Aviva filed an Answer and Counterclaim for Interpleader [4], and a Motion for Interpleader [5]. Aviva sought to interplead the $150,000.00 payment into the registry of this Court for adjudication of the inconsistent claims to the funds, pursuant to 28 U.S.C. § 1335(a)(2), and to join RSL Funding, LLC, and RSL-5B-IL, Ltd., as interpleader Counter-Defendants, pursuant to Federal Rule of Civil Procedure 19. Mot. for Interpleader, at p. 5.

Saucier filed a Motion [9] to Remand this action to state court. Saucier did not disagree that diversity jurisdiction existed, nor did he oppose Aviva's effort to interplead the August 30, 2010, structured settlement disbursement. Instead, he contended that the funds should be interpled into the registry of the Chancery

5

Court.  Resp. to Mot. to Interplead, at p. 2.  On September 24, 2010, Saucier filed an "Evidentiary Stipulation" in which he "stipulate[d] that he is not seeking monetary damages from defendant, Aviva," and that "he will not assert any claims of liability or pursue litigation against Aviva regarding his structured settlement annuity in the amount of $350,000.00, which is held by Aviva, so long as Aviva agrees to disburse the annuity payments as directed by valid court order."  Stip. [15] at 1. "The only remaining dispute exist[s] between Saucier and RSL regarding ownership of the future annuity payments."  Pl.'s Mem. [56] at 2.

On November 18, 2010, the Court entered an Order [19] denying Saucier's Motion to Remand; granting in part and denying in part Aviva's Motion for Leave to Interplead, for Permission to Deposit Disputed Sums into the Court's Registry, and to Join Necessary Parties as Interpleader Counterclaim Defendants; and staying the case pending resolution of the state court proceedings.  Order [19], at pp. 12-13. The Order also directed the Clerk of Court to add RSL Funding, LLC, and RSL-5B-IL, Ltd., as Counter-Defendants in this case, and further directed Aviva to serve Counter-Defendants RSL Funding, LLC, and RSL-5B-IL, Ltd., with process and a copy of the Order [19].  Order [19], at p. 12.

This Court later reconsidered its ruling denying Saucier's Motion to Remand [9], and in an Order [43] entered on June 27, 2011, determined that it should abstain from hearing this matter.  The Court granted Saucier's Motion to Remand and remanded the case to Chancery Court for further proceedings.  Order [43] at

8–9.  The Court's Order directed the Clerk to refund the annuity proceeds tendered into the registry of the Court to Aviva.  *Id.* at 9.

RSL appealed the Court's Orders [19], [33], [43], on grounds that they denied RSL's "multiple attempts to compel arbitration after the Court stayed the case but before the Court signed the remand order."  Notice of Appeal [45] at 1; Am. Notice of Appeal [46] at 2.  In an opinion issued on November 16, 2012, the United States Court of Appeals for the Fifth Circuit reversed and remanded this Court's judgment.  On remand, the Fifth Circuit directed this Court to "determine in the first instance whether any issues or claims decided by the state court are entitled to preclusive effect" and to "determine whether RSL is entitled to compel arbitration under 9 U.S.C. § 3."  Op. [50] at 11.  Aviva subsequently filed a Motion [64] for leave to deposit the interpled sums back into the Court's registry.  The Court granted [65] Aviva's Motion, and Aviva deposited $150,000.00 of the annuity funds into the Court's registry on September 9, 2013.  Receipt [66] at 1.

## II.  DISCUSSION

Pursuant to the mandate of the Fifth Circuit, this Court must first determine whether any issues or claims decided by the state courts are entitled to preclusive effect.  The issues in this case are Saucier's and RSL's claims to the interpled annuity funds and RSL's attempt to compel Saucier to arbitrate those claims.  Saucier maintains that RSL is collaterally estopped from compelling him to arbitrate the claims in this case.  Pl.'s Mem. [56] at 10–13. Alternatively, Saucier

argues that no valid agreement to arbitrate exists between him and RSL, such that he should not be compelled to arbitrate. *Id.* at 13–23.

RSL presents a number of arguments in support of its position that the state court rulings do not enjoy preclusive effect and that this matter should be referred to arbitration. RSL contends that the state courts decided an unripe issue of arbitrability, that the Chancery Court identified an arbitrable issue, that the Chancery Court never rendered a "final judgment," that RSL and Saucier agreed to arbitrate all of their disputes, and that an arbitrator should resolve in the first instance the preclusive effect of the state court rulings as well as arbitrability. RSL's Mem. [57] at 2–16.

A. <u>Whether an Arbitrator or the Court Should Determine the Preclusive Effect of the State Court Decisions</u>

RSL maintains that because the parties agreed to arbitrate the question of arbitrability, this matter should be referred to arbitration so that an arbitrator can determine "gateway procedural issues" such as the preclusive effect of the state court rulings. RSL's Mem. [57] at 10. RSL cites *New Orleans S.S. Ass'n v. Gen. Longshore Workers*, 626 F.2d 455 (5th Cir. 1980), for the proposition that "[t]he Fifth Circuit holds that issue preclusion is a matter for the arbitrator to determine, absent the arbitration agreement's providing that the defense of res judicata is not subject to arbitration." RSL's Mem. [57] at 10 (citing *New Orleans S.S. Ass'n*, 626 F.2d at 468). The question posed in *New Orleans S.S. Ass'n* was whether an arbitration award could be given an effect akin to res judicata or stare decisis with

8

regard to future disputes that might arise between the parties. *New Orleans S.S. Ass'n*, 626 F.2d at 468. The Fifth Circuit held that, if the parties could not agree, such a question would be a proper subject for arbitration. *Id.*

*New Orleans S.S. Ass'n* is distinguishable from the present case. This dispute does not present the Court with the question of the preclusive effect of a prior arbitration award. This matter has not been previously submitted to arbitration. Rather, this Court must resolve whether earlier state court decisions which denied RSL's motion to stay state court proceedings and refer the dispute with Saucier to arbitration are entitled to preclusive effect. *See In re Saucier,* 2013 WL 1197889, at *12. RSL cites no binding authority directing that an arbitrator should decide the preclusive effect of earlier state court rulings under the circumstances of this case, and the Fifth Circuit has specifically instructed this Court to address the issue of preclusion on remand. Op. [50] at 11. RSL's arguments on this point are not persuasive.[1]

B.   Whether the State Court Decision is Entitled to Preclusive Effect

   1.   Applicable Law

"The Full Faith and Credit Act, 28 U.S.C. § 1738, requires federal courts to give the same preclusive effect to state court judgments that those judgments would receive in the courts of the state from which the judgments emerged." *Capital City*

---

[1] The Court also notes that, in addition to denying RSL's motion to compel arbitration, the Chancery Court granted a permanent injunction prohibiting RSL from pursuing arbitration proceedings with Saucier based on its finding that RSL's efforts to enforce the underlying arbitration clause violated state law. *In re Saucier,* 2013 WL 1197889, at *7.

9

*Ins. Co. v. Hurst*, 632 F.3d 898, 903 (5th Cir. 2011) (citation omitted). Because Saucier seeks to estop RSL from compelling arbitration in this case based upon an earlier Mississippi state court judgment, this Court must apply Mississippi preclusion law.[2] *See id.*; *Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc.*, 448 F.3d 825, 828 (5th Cir. 2006).

  2. <u>Whether RSL is Collaterally Estopped from Compelling Arbitration</u>

Saucier argues that the doctrine of collateral estoppel operates to bar RSL from compelling arbitration. Pl.'s Mem. [56] at 11–13. Under Mississippi law, "[c]ollateral estoppel precludes parties from relitigating issues that are actually litigated, determined by, and essential to the judgment in a former action, even though a different cause of action is the subject of the subsequent action." *Rest. of Hattiesburg, LLC v. Hotel & Rest. Supply, Inc.*, 84 So. 3d 32, 45 (Miss. Ct. App. 2012); *see also Dunaway v. W.H. Hopper & Assocs., Inc.*, 422 So. 2d 749, 751 (Miss. 1982). "The doctrine of collateral estoppel serves a dual purpose. It protects litigants from the burden of relitigating an identical issue with the same party or his privy. It promotes judicial economy by preventing needless litigation." *Mayor*

---

[2]Application of federal common law would lead to the same conclusion. Under federal law, collateral estoppel applies to bar litigation of an issue previously decided in another proceeding by a court of competent jurisdiction when four conditions are met: (1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine. *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1421–22 (5th Cir. 1995).

*and Board of Aldermen, City of Ocean Springs v. Homebuilders Association of Mississippi, Inc.*, 932 So. 2d 44, 59 (Miss. 2006).

  a. <u>Is There a Final Judgment?</u>

For collateral estoppel to apply, "there must be a final judgment adjudicated on the merits." *Rodgers v. Moore,* 101 So. 3d 189, 195 (Miss. Ct. App. 2012) (citations omitted).  Of relevance here are two orders: (1) a July 17, 2011, Order [56-5] from the Chancery Court of Harrison County which denied RSL's motion to stay court proceedings and refer proceeding to arbitration and granted Saucier's motion for a permanent injunction prohibiting arbitration; and (2) a March 26, 2013, opinion of the Mississippi Court of Appeals which affirmed the July 17, 2011, Order of the Chancery Court.  In determining the preclusive effect of these rulings, this Court must first consider whether they qualify as final judgments under Mississippi law.  *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 637 F.2d 391, 399 (5th Cir. 1981).

To assess the finality of an order ruling on a motion to compel arbitration, the Mississippi Supreme Court has adopted "the procedure of the Federal Arbitration Act and follow[s] the lead of other jurisdictions." *Tupelo Auto Sales, Ltd. v. Scott*, 844 So. 2d 1167, 1170 (Miss. 2003).  Mississippi courts treat an order denying a motion to compel arbitration as a final judgment for appellate purposes on that legal issue and permit an appeal of such a ruling.  *Id.*; *see also* 9 U.S.C. § 16.  In addition, "[a] decision by the Court of Appeals is a final decision which is not reviewable by the Supreme Court except on writ of *certiorari*."  Miss. R. App. P.

17(a). Based on the foregoing authorities and the record, the Court concludes that the July 17, 2011, Order [56-5] of the Chancery Court and the March 26, 2013, opinion of the Mississippi Court of Appeals constitute final judgments for purposes of collateral estoppel. *See* Miss. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a final decree and any order from which an appeal lies.").

> The Mississippi Supreme Court has held that
>
> pendency of an appeal does not alter the collateral estoppel or res judicata effect of an otherwise final judgment. Only after being reversed by [the Mississippi Supreme] Court will the judgment lose its collateral estoppel or res judicata effect.

*Gollot v. State*, 646 So. 2d 1297, 1302 (Miss. 1994) (citing *Smith v. Malouf*, 597 So. 2d 1299, 1301–02 (Miss. 1992); Miss. R. Civ. P. 60(b)). While the timely filing of a petition for a writ of *certiorari* stays the issuance of the mandate of the Court of Appeals, Miss. R. App. P. 17(j), unless and until they are reversed by the Mississippi Supreme Court, the two Orders at issue here remain final judgments for collateral estoppel purposes, *see Gollot*, 646 So. 2d at 1302.

    b.  <u>Preclusive Effect of the Prior State Court Rulings</u>

Based upon the substance of the two state court rulings at issue here, the parties currently before the Court have previously litigated the issue of arbitrability. While strict identity of parties is not necessary for collateral estoppel to apply if it can be shown that a nonparty stands in privity with a party in the prior action, *EMC Mortg. Corp. v. Carmichael*, 17 So. 3d 1087, 1091 (Miss. 2009) (citation omitted), strict identity of the parties exists in this case. The RSL entities seeking to compel arbitration in this Court are the same RSL entities that litigated

the arbitration issue in the state court proceedings, and Saucier opposed it in those proceedings.

RSL sought to compel arbitration pursuant to the same three arbitration provisions under which it now seeks to compel arbitration in this Court—a January 27, 2009, amended transfer agreement; a January 27, 2009, application; and a January 29, 2009, promissory note. *Compare In re Saucier*, 2013 WL 1197889, at *10, *with* RSL's Mem. [57] at 7–8, *and* RSL's Resp. [59] at 1–4. The Chancery Court resolved the arbitrability issue against RSL by rejecting RSL's attempt to compel arbitration, and the Mississippi Court of Appeals affirmed the lower court's judgment. *In re Saucier*, 2013 WL 1197889, at *12. The resolution of that issue was essential to those earlier judgments. The essential elements necessary for application of collateral estoppel are therefore present. *See Dunaway*, 422 So. 2d at 751. For the foregoing reasons and based on the facts and circumstances presented here, the Court finds that collateral estoppel applies such that RSL is precluded from seeking to compel arbitration in this forum. *See id.* RSL's request to compel arbitration will be denied.

C.   <u>Remaining Issues Before The Court</u>

The only remaining claims before this Court are Saucier's and RSL's competing claims to the $150,000.00 annuity payment which have been interpled by Aviva. *See* Aviva's Countercls. for Interpleader [4], [20]; Pl.'s Stip. [15] at 1; Receipt [66] at 1. The $150,000.00 represents the lump sum annuity payment which was due Saucier on August 30, 2010. Aviva's Countercl. for Interpleader [20] at 2. RSL

maintains that this Court is vested "with jurisdiction to adjudicate the competing claims to the funds asserted by RSL and Saucier."  RSL's Reply [62] at 7.

Underlying the decisions of the Chancery Court and the Mississippi Court of Appeals on the arbitration issue was their conclusion that the amended transfer agreement between Saucier and RSL was not "effective" pursuant to Mississippi Code § 11-57-7.  *In re Saucier*, 2013 WL 1197889, at *11.  Thus, there has been no approval of any transfer of Saucier's structured settlement payment rights under Mississippi Code § 11-57-7.  Without such approval, RSL cannot encumber those rights.  *See* Miss. Code §§ 11-57-7 and 11-57-3(r).

Federal Rule of Civil Procedure 56(f)(3) provides that "[a]fter giving notice and a reasonable time to respond, the court may . . . consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute."  Fed. R. Civ. P. 56(f)(3).  Pursuant to Rule 56(f)(3), the Court gives notice that it appears that there may be no genuine dispute of material fact with respect to Saucier's entitlement to the $150,000.00 held in the registry of the Court and that Saucier may be entitled to judgment as a matter of law on his claim to the funds. The Court will afford the parties an opportunity to respond in accordance with Rule 56(f)(3) and show cause why summary judgment should not be granted in Saucier's favor and the interpled funds disbursed to him and why this matter should not then be fully and finally dismissed.

### III.  CONCLUSION

For the reasons stated herein, RSL's request to compel arbitration will be denied, and the parties will be directed to show cause why summary judgment should not be granted in Saucier's favor and the interpled funds disbursed to him and why this matter should not be fully and finally dismissed pursuant to Federal Rule of Civil Procedure 56(f)(3).

**IT IS, THEREFORE, ORDERED AND ADJUDGED**, that due to the preclusive effect of the prior Orders of the Chancery Court and the Mississippi Court of Appeals, the request to compel arbitration advanced by Counter-Defendants RSL Funding, LLC, and RSL-5B-IL, Ltd., is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the parties are directed to show cause in writing within 20 days of entry of this Memorandum Opinion and Order why summary judgment should not be granted in Plaintiff Benny Ray Saucier's favor pursuant to Federal Rule of Civil Procedure 56(f)(3), why the $150,000.00 deposited in the registry of this Court should not be disbursed to him, and why this matter should not be fully and finally dismissed.

**SO ORDERED AND ADJUDGED,** this the 4th day of November, 2013.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE